IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

TREY REDOWL, et al.,

    Plaintiffs,

vs.

STATE OF IOWA, et al.,

    Defendants.

No. C18-3025-LTS

MEMORANDUM OPINION AND
INITIAL REVIEW ORDER

## I. INTRODUCTION

This matter is before me on plaintiffs' pro se motion (Doc. No. 4) for emergency injunction ordering the release of funds from the Native American community institutional account (the Account) at Fort Dodge Correctional Facility (FDCF). Defendants have filed a resistance (Doc. No. 13) and plaintiffs have replied (Doc. No. 17). Also pending is individual plaintiff Raymond Cooper's pro se motion (Doc. No. 3) for leave to proceed in forma pauperis and plaintiffs' pro se motion (Doc. No. 14) to amend complaint.[1] Oral argument is not necessary. N.D. Ia. L.R. 7(c).

## II. BACKGROUND

Plaintiffs commenced this case on April 3, 2018 by filing a pro se complaint (Doc. No. 1) alleging various violations of their religious rights while incarcerated at FDCF. The plaintiffs did not pay the filing fee or request in forma pauperis. *See* 28 U.S.C. §

---

[1] In addition, plaintiffs have filed two pro se supplements (Doc. Nos. 18, 19) to the complaint which include affidavits by the various plaintiffs. The motion to amend (Doc. No. 14) exclusively clarifies the relief sought by the plaintiffs (i.e. injunctive relief requiring FDCF to permit certain Native American Religious practices).

1914(a) (requiring filing fee). Instead, they stated that the filing fee would be provided by a separate mailing. *See* Doc. No. 1-1.

On April 9, 2018, plaintiffs filed a motion to proceed in forma pauperis by plaintiff Raymond Cooper. Doc. No. 3. Plaintiffs then filed a pro se motion for a preliminary injunction, stating:

> The Native American community here at FDCF has an institutional account. This account accrues monies donated by the Native offenders for their use. On April 2, the Treasurer of the account, Plaintiff Bertucci, authorized expenditure of $350.00 filing fee, along with an attached letter to you, the Clerk of Court, stating that the filing fee was enclosed. This expenditure, including the letter addressed to your office, was seized by Treatment Director Netti Renshaw . . . She informed both Plaintiff Bertucci and myself, the lead plaintiff in this matter, that we, the Native American community at FDCF, could not pay the filing fee from our fund, despite this fund being financed by us.
>
> We believe, therefore, that defendant Renshaw is intentionally interfering with our protected conduct of Court Access under the First Amendment . . . Plaintiffs are seeking a TRO for release of their funds to your office.

Doc. No. 4. I ordered defendants to respond to the motion for TRO. Doc. No. 6.

### III.  *RELEVANT FACTS*

Religious groups such as the Native American Community (NAC) at FDCF are permitted to maintain institutional accounts (the Account) to be used by group members to purchase items for the collective benefit of the group. Doc. No. 13-2 at 2. These accounts are typically used to purchase items such as books or supplies for worship, or to make donations. *Id.* Netti Renshaw, the treatment director at FDCF and a named defendant in this case, stated that she "was given a request by the Native American group to use their funds to pay for the filing fee to be assessed in the present action," and that she "rejected the request . . . [because] such purpose would not collectively benefit the members of the group to further their religious pursuit." *Id.* She also stated that the request was denied because "[t]he individual choice to pursue litigation is certainly

2

allowed, but the funds of a religious group is not [sic] the purpose of such account." *Id.* Finally, Renshaw stated that she was concerned that not all plaintiffs in the lawsuit had contributed equally to the account and that some contributors to the account were not named plaintiffs. *Id.*

Plaintiffs respond that pursuing litigation to right a violation of their religious rights is a proper use of the Account, and that the NAC unanimously authorized the use of funds for this purpose. Doc. No. 17 at 9, 10. Plaintiffs explain that not every member of the NAC is a member of the lawsuit because some members feared retaliation as a result of being named plaintiffs. *Id.* Plaintiffs also submitted a copy of the FDCF policy which sets out the rules under which prisoners may make donations for the support of their religion. The policy states:

> Individual offender donations for the support of one's religion may be permitted consistent with IDOC policies **AD-FM-11**, *Offender Funds* and **AD-GA-17**, *Acceptance of Gifts by Executive Branch Departments*. Any donation shall be processed through the Associate Warden of Treatment/Designee, and Business Office.

*Id.* at 12 (*Religious Programming*, OP-RP-01).

## IV. STANDARDS

### A. TRO Standards

Federal Rule of Civil Procedure 65 states, in relevant part:

(a) Preliminary Injunction.

    (1) *Notice.* The court may issue a preliminary injunction only on notice to the adverse party.

    (2) *Consolidating the Hearing with the Trial on the Merits.* Before or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing. Even when consolidation is not ordered, evidence that is received on the motion and that would be admissible at trial becomes part of

the trial record and need not be repeated at trial. But the court must preserve any party's right to a jury trial.

(b) Temporary Restraining Order.

    (1) *Issuing Without Notice.* The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:

        (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

        (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

    (2) *Contents; Expiration.* Every temporary restraining order issued without notice must state the date and hour it was issued; describe the injury and state why it is irreparable; state why the order was issued without notice; and be promptly filed in the clerk's office and entered in the record. The order expires at the time after entry – not to exceed 14 days – that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension. The reason for an extension must be entered in the record.

    (3) *Expediting the Preliminary-Injunction Hearing.* If the order is issued without notice, the motion for a preliminary injunction must be set for hearing at the earliest possible time, taking precedence over all other matters except hearings on older matters of the same character. At the hearing, the party who obtained the order must proceed with the motion; if the party does not, the court must dissolve the order.

    (4) *Motion to Dissolve.* On 2 days' notice to the party who obtained the order without notice – or on shorter notice set by the court – the adverse party may appear and move to dissolve or modify the order. The court must then hear and decide the motion as promptly as justice requires.

(c) Security. The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an

> amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. The United States, its officers, and its agencies are not required to give security.

Fed. R. Civ. P. 65(a)-(c). The court has considerable discretion in ruling on a request for injunctive relief. *See Sharpe Holdings, Inc. v. U.S. Dep't of Health & Human Srvs.*, 801 F.3d 927, 936 (8th Cir. 2015), *vacated on other grounds*, 2016 WL 2842448 (2016). "[T]he burden of establishing the propriety of an injunction is on the movant." *Roudachevski v. All-Am. Care Ctrs., Inc.*, 648 F.3d 701, 705 (8th Cir. 2011).

The standards for determining whether injunctive relief is appropriate are set out in *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.3d 109, 114 (8th Cir. 1981). Under the *Dataphase* test, I must consider: (1) the threat of irreparable harm to the movant; (2) the balance between the potential harm and any harm that granting the injunction will cause to other parties to the litigation; (3) the probability that the movant will succeed on the merits; and (4) the public interest. *Med. Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc.*, 336 F.3d 801, 803 (8th Cir. 2003); *see also Dataphase*, 640 F.2d at 114. "No single factor is dispositive, as the district court must balance all factors to determine whether the injunction should issue." *Lankford v. Sherman*, 451 F.3d 496, 503 (8th Cir. 2006); *see also Dataphase*, 640 F.2d at 113 ("At base, the question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined.").

### B. *In Forma Pauperis Standard*

The filing fee for a 42 U.S.C. § 1983 petition is $350, plus the $50 administration fee. 28 U.S.C. § 1914(a). The doctrine of in forma pauperis allows a plaintiff to proceed without incurring filing fees or other court costs. 28 U.S.C. § 1951(a)(1). Accordingly, plaintiffs who apply for and receive in forma pauperis status may file their cases for free. However, under the Prison Litigation Reform Act (PLRA), prisoners must meet certain requirements in order to have their filing fee waived. 28 U.S.C. § 1915(a)-(b). A

prisoner is defined as "any person incarcerated or detained in any facility" for "violations of criminal law . . . ." 28 U.S.C. § 1915(h). Under the statute, prisoners are required to pay filing fees over time and are not entitled to proceed in forma pauperis as to filing fees.

## C. Initial Review Standard

A pro se complaint must be liberally construed. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Smith v. St. Bernards Reg'l Med. Ctr.*, 19 F.3d 1254, 1255 (8th Cir. 1994); see also *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) (explaining that, although pro se complaints must be liberally construed, they must allege sufficient facts to support the claims that are advanced). In addition, unless the facts alleged are clearly baseless, they must be weighed in favor of the plaintiff. *See Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992). A court, however, can dismiss at any time a complaint filed in forma pauperis if the complaint is frivolous, malicious, fails to state a claim on which relief may be granted or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2); 28 U.S.C. § 1915A(b)(1). A claim is "frivolous" if it "lacks an arguable basis in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *accord Cokeley v. Endell*, 27 F.3d 331, 332 (8th Cir. 1994). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Accordingly, a court may review the complaint and dismiss sua sponte those claims that fail "'to raise a right to relief above the speculative level. . . .'", *Parkhurst v. Tabor*, 569 F.3d 861, 865 (8th Cir. 2009) (quoting *Bell Atl.*, 550 U.S. at 555), or that are premised on meritless legal theories or clearly lack any factual basis, *see Neitzke*, 490 U.S. at 325. *See, e.g., Denton v. Hernandez*, 504 U.S. at 27 (considering frivolousness); *Myers v. Vogal*, 960 F.2d 750, 751 (8th Cir. 1992) (concluding that a district court may dismiss an action if an affirmative defense exists).

## V. DISCUSSION

### A. Motion to Amend Complaint

Plaintiffs' "motion to amend complaint" includes a clarification of the type of relief they seek. Because the proposed amendment is limited, and this case has not yet proceeded past the initial phases, the motion to amend complaint will be granted. Plaintiffs may, within 30 days of this order, file an amended complaint that includes all of plaintiffs' claims, as well as the relief requested, and any attachments to the complaint that plaintiffs see fit. However, plaintiffs are on notice that although they are proceeding pro se, they must comply with the filing requirements as set out in the Local Rules for the Northern District of Iowa. Future amendments and supplements must be filed in compliance with Local Rule 15, which provides:

> A party moving to amend or supplement a pleading pursuant to Federal Rule of Civil Procedure 15(a)(2) must describe in the motion the changes sought, and must electronically attach to the motion and file under the same docket entry the proposed amended or supplemented pleading. . . . An amended or supplemented pleading, whether filed as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1) or as an electronic attachment to a motion, must not, except by leave of court, incorporate any prior pleading by reference, but must reproduce the entire new pleading. If a motion to amend or supplement a pleading is granted, the Clerk of Court will detach and docket the proposed pleading.

N.D. Iowa L.R. 7(c).

### B. Injunctive Relief

Plaintiffs argue that there is no policy prohibiting the use of the Account for litigation if the litigation is in furtherance of protecting their religious rights (and therefore promoting their religion) and the group has unanimously approved the use of the funds for this purpose. Defendants argue that allowing the group to use their funds in this manner is inconsistent with policy, would promote vexatious litigation and would be unfair to those who donated to the Account in unequal shares and to those who donated who are not plaintiffs.

Regardless of the relative merits of allowing plaintiffs to pay the filing fee as they have proposed, the PLRA does not permit them to do so. In general, plaintiffs proceeding jointly in a civil action are only required to pay a single filing fee. See 28 U.S.C. § 1914(a) (clerk "shall require the parties instituting any civil action . . . to pay a filing fee of $350."). However, under the PLRA, "if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). Courts have interpreted this to mean that every prisoner plaintiff is required to pay the full filing fee. See *Hagan v. Rogers*, 570 F.3d 146, 155 (3rd Cir. 2009) (requiring "each joined prisoner to pay the full individual fee."); *Boriboune v. Berge*, 391 F.3d 852, 856 (7th Cir. 2004) ("[O]ne price of forma pauperis status is each prisoner's responsibility to pay the full fee instalments (or in advance, if § 1915(g) applies), no matter how many other plaintiffs join the complaint."); *Hubbard v. Haley*, 262 F.3d 1194, 1197-98 (11th Cir. 2001) ("The congressional purpose in promulgating the PLRA enforces an interpretation that each prisoner pay the full filing fee."). If plaintiffs wish to proceed, each plaintiff must individually pay the $350 filing fee, whether proceeding in forma pauperis or otherwise.

Because plaintiffs cannot do what they propose to do under the PLRA, there is no "irreparable harm" that justifies granting injunctive relief. In the absence of an irreparable harm, plaintiffs' motion for an emergency injunction must be denied. *Aswegan v. Henry*, 981 F.3d 313, 314 (8th Cir. 1992) (citing *Modern Computer Sys., Inc. v. Modern Banking Sys., Inc.*, 871 F.2d 734, 738 (8th Cir. 1991).

C.  *In Forma Pauperis Status*

In order for a court to authorize the commencement of an action without the prepayment of the filing fee, a person must submit an affidavit that includes a statement of all the assets the person possesses. *See* 28 U.S.C. § 1915(a)(1). In addition, a prisoner must submit a certified copy of the trust fund account statement (or institutional equivalent) for the 6-month period immediately preceding the filing of the complaint,

obtained from the appropriate official of each prison at which the prisoner was or is confined. *See* 28 U.S.C. § 1915(a)(2). However, even if the court deems it appropriate to grant a prisoner-plaintiff in forma pauperis status, the plaintiff is still required to pay the full $350 filing fee by making payments on an installment basis. 28 U.S.C. § 1915(b0(1); *see also In re Tyler*, 110 F.3d 528, 529-30 (8th Cir. 1997) ("[T]he PLRA makes prisoners responsible for their filing fees the moment the prisoner brings a civil action or files an appeal."). The full filing fee will be collected even if the court dismisses the case because it is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary damages against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2).

To date, only plaintiff Raymond Cooper has filed a motion to proceed in forma pauperis. It is clear from his filing that he does not have the assets necessary to pay the filing fee, therefore, his application is granted. However, as discussed above, Cooper must still pay the full filing fee, in installments. He must pay an initial filing fee in the amount of twenty percent of the greater of his average monthly account balance or average monthly deposits for the six months preceding the filing of the complaint. 28 U.S.C. § 1915(b)(1). Based on the documents that Cooper submitted, I find that the initial partial filing fee is $7.01. *See* Doc. No. 3-1. Cooper shall submit $7.01 by no later than thirty days from the date of this order. If the court does not receive payment by this deadline, the instant action shall be dismissed as to plaintiff Cooper pursuant to Fed. R. Civ. P. 41(b) (permitting dismissal when a plaintiff either fails to prosecute or fails to respond to an order of the court); *Hutchins v. A.G. Edwards & Sons*, 116 F.3d 1256, 1259-60 (8th Cir. 1997) (explaining court's power to dismiss an action). If necessary, Cooper may request in a written motion an extension of time to pay the initial partial filing fee.

In addition to the initial partial filing fee, Cooper must "make monthly payments of 20% of the preceding month's income credited to the prisoner's account." 28 U.S.C.

§ 1915(b)(2). The statute places the burden on the prisoner's institution to collect the additional monthly payments and forward them to the court. Specifically:

> [a]fter payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

28 U.S.C. § 1915(b)(2). Therefore, after Cooper pays in full the initial partial filing fee, the remaining installments shall be collected by the institution having custody of the plaintiff. The clerk's office shall send a copy of this order and the notice of collection of filing fee to the appropriate official at the place where Cooper is an inmate.

The remaining plaintiffs must either pay the filing fee or file an application for permission to proceed in forma pauperis within 30 days of the date of this order. If the remaining plaintiffs do not pay the filing fee, file an application for permission to proceed in forma pauperis, or take other appropriate action within 30 days, they may be dismissed from the case.

### D. Initial Review

Although only one plaintiff has qualified for in forma pauperis status at this time, I find it appropriate to conduct an Initial Review as to all of the claims alleged in the complaint. Plaintiffs bring four claims against various individuals at FDCF in connection with alleged violations of their First Amendment rights to Freedom of Religion under 18 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc (RLUIPA). Broadly, plaintiffs, who are part of the American Indian Organization at FDCF, allege that the individual defendants have (1) desecrated ground which the plaintiffs consider sacred by removing religious items, touching religious items, and preventing plaintiffs from using the Sweat Lodge without cause; (2) denied the American Indian Organization permission to hold an event in an unequal manner with

other organizations; (3) issued a rule that prevents plaintiffs from wearing their religious headbands; and (4) excommunicated plaintiff Langdeaux from the Native American Religion group and activities in retaliation for activities related to remedying the above-described harms.

Title 42 U.S.C. § 1983 provides, in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983 was designed to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 685 (1978). However, 42 U.S.C. § 1983 provides no substantive rights. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994); *Graham v. Conner*, 490 U.S. 386, 393-94 (1989); *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979). "One cannot go into court and claim a 'violation of [42 U.S.C.] § 1983' — for [42 U.S.C.] § 1983 by itself does not protect anyone against anything." *Chapman*, 441 U.S. at 617. Rather, 42 U.S.C. § 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. § 1983; *see also Albright*, 510 U.S. at 271 (42 U.S.C. § 1983 "merely provides a method for vindicating federal rights elsewhere conferred."); *Graham*, 490 U.S. at 393-94 (same); *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980) ("Constitution and laws" means 42 U.S.C. § 1983 provides remedies for violations of rights created by federal statute, as well as those created by the Constitution.). To state a claim under 42 U.S.C. § 1983, a plaintiff must establish: (1) the violation of a right secured by the Constitution or laws of the United States and (2) the alleged deprivation of that right was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

The RLUIPA provides, in relevant part, that:

11

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1(a).

Plaintiffs have adequately set forth a violation of their First Amendment rights and the RLUIPA. Specifically, they allege that state employees have interfered with their religious practices for reasons that are not justifiable, whether under the § 1983 standards or under the RLUIPA. At this stage of the case, I cannot determine whether defendants have a sufficient justification for the alleged violations. Accordingly, I will allow plaintiffs' claims to proceed past initial review.

## VI. CONCLUSION

For the reasons set forth herein:

1. Plaintiffs' motion (Doc. No. 14) to amend the complaint is **granted.** Plaintiffs must file an amended complaint within **thirty (30) days** of the date of this order. Plaintiffs must file the amended complaint, along with any affidavits in support of the complaint, as one document with attachments. Plaintiffs must seek the court's permission in compliance with Local Rule 15 before filing any further amended complaints.

2. Plaintiffs motion (Doc. No. 4) for emergency injunction is **denied.** As set forth above, each plaintiff must pay the filing fee individually.

3. Plaintiff Raymond Cooper's motion to proceed in forma pauperis (Doc. No. 3) is **granted.**

4. Cooper is directed to submit an initial partial filing of $7.01 by no later than **thirty (30) days** from the date of this order. If necessary, he may request in a

written motion an extension of time to pay the initial partial filing fee. Additionally, after he pays the initial partial filing fee, the institution having custody of him is directed to collect and remit monthly payments in the manner set forth in 28 U.S.C. § 1915(b)(2). Until the $350 filing fee is paid in full, Cooper is obligated to pay and the institution having custody of him is obligated to forward 20 percent of the preceding month's income credited to his account each time the amount in the account exceeds $10.00.

5. The clerk's office is directed to send a copy of this order and the notice of collection of filing fee to the appropriate official at the place where Cooper is an inmate.

6. The remaining plaintiffs must either (a) file a motion to proceed in forma pauperis or (b) pay the $350 filing fee, on an individual basis, within **thirty (30) days** of the date of this order. If necessary, a plaintiff may request, individually, an extension of time to pay the initial partial filing fee.

**IT IS SO ORDERED.**

**DATED** this 19th day of March, 2019.

_____
Leonard T. Strand, Chief Judge

TO: WARDEN/ADMINISTRATOR
Fort Dodge Correctional Facility, Fort Dodge, Iowa

## NOTICE OF COLLECTION OF FILING FEE

You are hereby given notice that Raymond Cooper, No. 1069163, an inmate at your facility, filed the following lawsuit in the United States District Court for the Northern District of Iowa: *Redowl et al. v. State of Iowa, et al.*, Case No. C18-3025-LTS. The inmate was granted in forma pauperis status pursuant to 28 U.S.C. § 1915(b), which requires partial payments of the $350.00 filing fee. Based on the inmate's statements, the court has assessed an initial partial filing fee of $7.01, which the inmate must pay now to the clerk of court. *See* 28 U.S.C. § 1915(b)(1).

> After payment of the initial partial filing fee, the [inmate] shall be required to make monthly payments of 20 percent of the preceding month's income credited to [his] account. The agency having custody of the [inmate] shall forward payments from [his] account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

28 U.S.C. § 1915(b)(2). Therefore, you must monitor the account and send payments to the clerk of court according to the system provided in 28 U.S.C. § 1915(b)(2), that is, after plaintiff pays the initial partial filing fee of $7.01, you should begin making monthly payments of 20 percent of the preceding month's income credited to the inmate's account. Please make the appropriate arrangements to have these fees deducted and sent to the court as instructed.

In the event this inmate is transferred to a different jail or correctional facility before the full filing fee is paid, you must forward this "Notice" to the Warden/Administrator of the receiving institution. This "Notice" will be binding on the Warden/Administrator of any facility where the inmate is incarcerated until the filing fee is paid in full.

Robert L. Phelps
U.S. District Court Clerk
Northern District of Iowa

14